**Joseph G. SENDI**

v.

**NCR COMTEN, INC.**

**Civ. A. No. 84–2114.**

United States District Court, E.D. Pennsylvania.

Oct. 25, 1985.

David R. Black, Media, Pa., for plaintiff.

Philip H. Lebowitz, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, Chief Judge.

Plaintiff Joseph Sendi brought this action claiming that his employer deprived him of earned commissions in violation of the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.1 *et seq.* Presently before me is defendant's motion for summary judgment. Because the record reveals no genuine issues of material fact, I will grant defendant's motion.

The basic facts are not in dispute. Defendant NCR Comten is in the business of selling and leasing computer equipment. Plaintiff was hired by defendant's predecessor company in 1967, and in 1981 held the position of Regional Sales Director for defendant's eastern region. Plaintiff's compensation included commissions for sales and leases within the eastern region.

On November 2, 1981, Sendi submitted a letter of resignation, requesting a termination date of December 31. He proposed to remain at Comten for part of November and use his accumulated vacation days to cover the rest of the period. Defendant rejected Sendi's proposal and terminated his employment as of November 6. Defendant gave him two weeks' severance pay and a lump sum payment for 200 hours of accumulated vacation, but paid him no commissions for contracts which closed after November 6.

As a Comten employee, Sendi earned commissions under the NCR Comten Sales Representative Incentive Compensation Plan Agreement and the Regional Directors Compensation Plan Agreement (the Plans). The Plans provide that employees earn commissions on most sales and leases when Comten accepts the orders. For hardware lease or purchase contracts generating $10,000 or more of revenue, however, employees "qualify for 50% of the commission at the time the contract is accepted by NCR Comten and the Customer. The remaining 50% is payable when the equipment has been accepted by the customer and is Certified Ready for Use (CRFU) by NCR Comten." Sales Representative Incentive Compensation Plan Agreement at ¶ VI. The Plans further provide that commissions "are not earned until paid" and that employees "forfeit all rights to commissions which have not been paid at termination of employment." *Id.* at ¶¶ VI, VII.

Plaintiff's complaint rests on two grounds. First, he claims that, regardless of the Plans' terms, he is entitled to commissions for all contracts generated by his efforts. Second, he claims Comten terminated him on November 6 rather than December 31 in order to deprive him of earned commissions.

Defendant has moved for summary judgment on the ground that plaintiff was paid all commissions which he had earned prior to his termination. Defendant also contends that plaintiff was an employee at will

with no right to set his own termination date.

### I. Plaintiff's Claim for Deprivation of Earned Commissions

The WPCL provides:

Whenever an employer separates an employe from the payroll, or whenever an employe quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

43 P.S. § 260.5(a).

Plaintiff argues that he is entitled to commissions for sales made between November 6 and December 31, 1981. He alleges that he was the only eastern region Sales Director in 1981, and that he is ultimately responsible for all sales concluded during that year. He also claims he was wrongfully deprived of commissions on certain hardware contracts worth more than $10,000. In accordance with the Plans, Sendi was paid only a 50% commission on such contracts which Comten accepted before his November 6 termination date, but under which the equipment was not installed and certified ready for use until after November 6. Plaintiff seeks to recover the remaining 50%. He argues that since the WPCL requires the payment of all "wages or compensation earned" he is entitled to commissions for all contracts attributable to his labor, and that the Plans' requirements cannot be applied to deprive him of such commissions. It is plaintiff's contention that summary judgment is inappropriate because his claims cannot be resolved without a detailed examination of his sales efforts and a determination of what contracts are traceable to those efforts.

▮ Plaintiff misconceives the nature of the WPCL. The statute itself does not create a right to compensation. Rather, it gives "additional protections to employes by providing statutory remedies for the employer's breach of its contractual obligation to pay wages." *Ward v. Whalen,* 18 Pa.D. & C.3d 710, 714 (C.P. Allegheny County 1981). *See also Mirkin v. Cintas*

*Corp.,* 538 F.Supp. 145, 148 n. 2 (E.D.Pa. 1982). The contract between the parties governs whether specific wages or commissions are "earned." *See Heimenz v. Pennsylvania Power & Light Co.,* 75 Pa.D. & C.2d 405, 406 (C.P. Lycoming County 1976) (whether severance pay is wages according to the WPCL depends upon the terms of the contract between the parties). *See also Wilson v. Homestead Valve Manufacturing Co.,* 217 F.2d 792, 797 (3d Cir.1954) (under Pennsylvania law, "the compensation to which ... [an employee is] entitled depends upon the language of the employment contract"), *cert. denied,* 349 U.S. 916, 75 S.Ct. 606, 99 L.Ed. 1250 (1955); *Marcin v. Darling Valve & Manufacturing Co.,* 259 F.Supp. 720, 723 (W.D.Pa.1966) (parties may by contract limit the "payment of commissions on orders placed before termination of employment"); *Levan v. Royal Paper Products,* 199 Pa.Super.Ct. 505, 185 A.2d 801 (1962). It is necessary, therefore to determine whether under the Plans plaintiff earned the commissions he seeks to recover.

I note that the Plans use varying and somewhat inconsistent terms to describe employees' entitlement to commissions. The Plans set forth when employees "qualify" for certain commissions and when other commissions are "payable," and in the same section state that commissions "are not earned until paid." The section following provides that employees forfeit all commissions not paid at time of termination. If the latter two provisions control, Sendi has earned no commissions not already paid and thus can recover nothing under the WPCL. In considering defendant's motion for summary judgment, however, I will construe the Plans most favorably to the plaintiff. I will thus assume that Sendi "earned" commissions when he "qualified" for them or when they became "payable." This reading is consistent with Comten's actual practice and with Sendi's understanding of the Plans. *See* Plaintiff's Deposition at 74 (Dec. 14, 1984).

▮ Even assuming plaintiff earned commissions when they became payable, I

1580

can perceive no question of fact precluding the entry of summary judgment. Plaintiff clearly has no right under the Plans to receive commissions on sales made after his termination. In addition, the Plans preclude a finding that he is entitled to more than a 50% commission on large hardware contracts when the equipment was not installed during his term of employment. The commissions plaintiff seeks were not payable under the Plans and were thus not earned for the purpose of the WPCL.

■ Plaintiff agreed to the Plans and his commission rights are governed by their terms, including the terms defining the conditions under which commissions are payable. I cannot accept his argument that the Plans' provisions contravene public policy. Since the WPCL does not purport to outline what compensation is due in any particular case, a contractual restriction on when commissions are earned does not frustrate the statute's purpose. Defendant is entitled to summary judgment on plaintiff's claim that he was deprived of earned commissions.

## II. Plaintiff's Claim for Wrongful Discharge

Under Pennsylvania law, an employee is presumed to "serve[ ] at the pleasure of an employer and the relationship may be terminated by either party and at any time." *Adams v. Budd Co.*, 583 F.Supp. 711, 713 (E.D.Pa.1984). This presumption may be overcome by a showing that termination violated a clearly established public policy. *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894, 898 (3d Cir.1983). Moreover, an employer's custom or practice can create additional contractual rights. *Id.* at 902–03.

Plaintiff advances two separate contentions. First, he asserts that his November 6 termination violated the public policy underlying the WPCL in that Comten terminated him on November 6 for the purpose of depriving him of earned commissions. Plaintiff next asserts that Comten's personnel policy manual entitled him to at least two weeks' notice before being removed from the payroll.

Plaintiff's public policy argument is without merit. As I have already discussed, the WPCL is designed to ensure that employees receive the compensation provided for in their contracts. It does not create a new right to compensation, nor does it guarantee an employee a specific term of employment. In the case of a terminated employee, the WPCL applies only to wages earned prior to termination. It "has no application to wages agreed to be paid in the future for services to be rendered in the future." *Weingrad v. Fischer & Porter Co.*, 47 Pa.D. & C.2d 244, 250 (C.P. Bucks County 1968).

■ Sendi was paid all commissions which, according to the Plans, he had earned as of November 6. He thus received everything he was entitled to under the WPCL. Sendi nevertheless complains that Comten, in order to reduce his commissions, accepted his resignation earlier than the date he had requested, December 31. By claiming that defendant's choice of a termination date violated public policy, plaintiff in effect interprets the WPCL to grant an employee the right to earn compensation until whatever date the employee wishes to specify as his date of termination. Such an interpretation finds no support in the language or purpose of the statute.

■ I must also reject plaintiff's claim that he was entitled to remain at Comten and earn commissions for at least two additional weeks. That claim is based primarily on Comten's personnel policy manual, which states: "Employees are required to give at least two weeks written notice of termination." In support, plaintiff has submitted evidence to show that Comten has customarily kept resigning employees on the payroll for at least two weeks.

The Third Circuit has held that summary judgment on a claim such as this is appropriate if, after the plaintiff has had an opportunity to conduct discovery, the record shows no genuine issue of material fact. *Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 224 (3d Cir.1984). After reviewing the evidence submitted, I conclude as a matter of law that the personnel policy

manual does not create an enforceable contract right. The notice requirement is imposed only on employees, and is clearly a matter of convenience. The manual states that the notice is required in order to guarantee a terminating employee "timely receipt of his/her final paycheck." The only consequence of an employee's failure to give notice is that the final paycheck would be mailed instead of being handed to the employee on the last day of employment. Such administrative provisions in a personnel policy manual do not rise to an agreement by which the employer must abide. *See, e.g., id.* at 224–25; *Sharon Steel Corp. v. VJR Co.,* 604 F.Supp. 420, *motion for reconsideration denied,* 603 F.Supp. 1199 (W.D.Pa.1985); *Boresen v. Rohm & Haas, Inc.,* 526 F.Supp. 1230, 1235–56 (E.D. Pa.1981), *aff'd mem.,* 729 F.2d 1445 (3d Cir.1984); *Beidler v. W.R. Grace, Inc.,* 461 F.Supp. 1013, 1016 (E.D.Pa.1978), *aff'd mem.,* 609 F.2d 500 (3d Cir.1979); *Richardson v. Charles Cole Memorial Hospital,* 320 Pa.Super.Ct. 106, 466 A.2d 1084 (1983).

My conclusion with regard to the notice provision is reinforced by plaintiff's deposition testimony. Sendi, far from relying on the provision in question, was not even certain that Comten had a personnel manual and could not recall reading one. Plaintiff's Deposition at 52 (Dec. 14, 1984). Further, he conceded that he had no agreement with Comten as to the length of his employment or the conditions upon which he could be fired. Plaintiff's Deposition at 63–69 (Jan. 4, 1985).

The evidence concerning Comten's practices does not mandate a different result. Plaintiff has submitted deposition excerpts, affidavits and company records to show that a number of employees remained at Comten for at least two weeks after giving notice of resignation. Such evidence is insufficient to establish that a two weeks' notice requirement had become part of the contract between Comten and its employees. Sendi himself testified that Comten followed no set practice with regard to employees who resigned. Plaintiff's Deposition at 57–58 (Dec. 14, 1984). Robert Hartig, Sendi's successor, testified that whether a resigning employee would continue to receive commissions or would be terminated immediately was determined on a case by case basis. Deposition of Robert Hartig at 59–62 (May 2, 1985). Other Comten officials testified that the company's practice was to require immediate termination of employees with access to confidential information. Deposition of Dietrich Mittelstadt at 35–36 (April 25, 1985); Deposition of Edward J. Clark at 30–31 (April 25, 1985). Comten cannot be barred from exercising its judgment in individual cases merely because it has permitted certain employees to remain after submitting their resignation.

Sendi voluntarily submitted his resignation on November 2, after accepting a position with another company engaged in the same business as Comten. As his resignation letter shows, he was fully aware of the sales activity that would occur in December and he hoped to benefit from that activity even though he was leaving the company. Nothing in the WPCL or Comten's policies and practices compelled Comten to accept Sendi's proposal or to pay him commissions he had not earned under his contract. Defendant's motion for summary judgment will be granted as to plaintiff's claims for wrongful discharge and deprivation of earned commissions.