## Sheeran v. Kubert, Himmelstein & Associates P.C.

304

*Sidney L. Gold,* for plaintiff.
*Gilbert B. Abramson* for defendants.

FEUDAL, *S.J.,* October 27, 2003—"Whose bread I eat, whose wine I drink, his song I sing." Damon Runyan. Before the court in an apparent case of first impression, is defendants' motion for summary judgment in the wrongful discharge action involving an office manager/secretary of a Philadelphia law firm, who alleges she was discharged for serving on jury duty. Defendants, who claim they did not terminate plaintiff because she served on jury duty, agree for the purpose of summary judgment it can be assumed plaintiff was so discharged. They rely on 42 Pa.C.S. §4563 which provides for protection of employment of petit and grand jurors, but excludes employers in any retail or service industry employing fewer than 15 persons. Plaintiff asserts the section is inapplicable and relies on the case of *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978), which held that an employer who discharges an employee for serving on jury duty violates public policy and can assert claim for wrongful discharge.

## STATEMENT OF FACTS

Plaintiff, Julia Sheeran, was an office manager/secretary with defendants, Kubert, Himmelstein & Associates P.C. from on or about September 11, 1978, until July 13,

2001, the date of her termination. Defendants, Kubert, Himmelstein & Associates P.C, are engaged in the business of providing legal services to their clients, and, at all times relevant to plaintiff's claim, defendants employed less than 15 persons.

In April 2001, Sheeran received a summons to appear for jury duty at the Court of Common Pleas for the County of Philadelphia. On May 20, 2001, Sheeran reported for jury service and was selected to serve in a two- to three-day trial before the Honorable John J. Chiovero and she did indeed serve as a juror at the trial. Moreover, it is undisputed that Sheeran was terminated from her employment on July 13, 2001.

As to the motion for summary judgment, the sole fact in dispute is whether Sheeran was terminated for serving on a jury.

## RELEVANT LAW

*"Declaration of policy*

"It is the policy of this Commonwealth that:

"(1) All persons entitled to a jury trial in a civil action, or criminal proceeding shall have the right to jurors selected at random from a representative cross-section of the eligible population of the county.

"(2) All qualified citizens shall have the opportunity to be considered for service as jurors in the courts of this Commonwealth and shall have an obligation to serve as jurors when summoned for that purpose.

"(3) A citizen shall not be excluded from service as a juror on the basis of race, color, religion, sex, national origin or economic status." 42 Pa.C.S. §4501.

*"Exemptions from jury duty*

"(a) General rule.—No person shall be exempt or excused from jury duty except the following:

"(1) Persons in active service of the armed forces of the United States or of the Commonwealth of Pennsylvania.

"(2) Persons who have served within three years next preceding on any jury except a person who served as a juror for fewer than three days in any one year in which case the exemption period shall be one year.

"(3) Persons demonstrating to the court undue hardship or extreme inconvenience may be excused permanently or for such period as the court determines is necessary, and if excused for a limited period shall, at the end of the period, be assigned to the next jury array.

"(4) Spouses, children, siblings, parents, grandparents and grandchildren of victims of criminal homicide under 18 Pa.C.S. §2501 (relating to criminal homicide).

"(b) Challenges.—This subchapter shall not affect the existing practice with respect to peremptory challenges and challenges for cause." 42 Pa.C.S. §4503. As amended 1982, Dec. 20, P.L. 1409, no. 326, art.11, §201, effective in 60 days; 2002, Oct. 17, P.L. 886, no. 128, §1, effective in 60 days.

*"List of disqualified jurors*

"(a) Maintenance of list.—The jury selection commission shall create and maintain a list of names of all prospective jurors who have been disqualified and the reasons for their disqualification. The list shall be open for public inspection.

"(b) Relatives of criminal homicide victims.—Any persons who are exempt or excused from jury duty under section 4503(a)(4) (relating to exemptions from jury duty) may petition the jury selection commission to have their names placed on the list of disqualified jurors. Any persons so placed on the list may, at any time, petition for removal of their names from the list unless they are otherwise disqualified under section 4502 relating to qualifications of jurors)." 42 Pa.C.S. §4508.

*"Protection of employment of petit and grand jurors*

"(a) General rule.—An employer shall not deprive an employee of his employment, seniority position or benefits, or threaten or otherwise coerce him with respect thereto, because the employee receives a summons, responds thereto, serves as a juror or attends court for prospective jury service. Nothing in this section shall be construed to require the employer to compensate the employee for employment time lost because of such jury service.

"(b) Penalty.—Any employer who violates subsection (a) commits a summary offense.

"(c) Civil remedy available.—If an employer penalizes an employee in violation of subsection (a) the employee may bring a civil action for recovery of wages and benefits lost as a result of the violation and for an order requiring the reinstatement of the employee. Damages recoverable shall not exceed wages and benefits actually lost. If he prevails, the employee shall be allowed a reasonable attorney's fee fixed by the court.

"(d) Exception.—Subsection (a) shall not apply to any employer in any retail or service industry employing

fewer than 15 persons or any employer in any manufacturing industry employing fewer than 40 persons.

"(e) Right to excuse.—Any individual not entitled to re-employment under subsection (a) shall, upon request to the court, be excused from jury service." 42 Pa.C.S. §4563.

According to the defendants, the original right of action against an employer established in *Reuther* was based on a public policy exception to the at-will employment doctrine. *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978). As noted in defendants' memorandum of law in support of summary judgment, such a public policy must be articulated in the constitution, legislation, and administrative regulation or a judicial decision. *Hunger v. Grand Central Sanitation,* 447 Pa. Super. 575, 580, 670 A.2d 173, 175 (1996). The stated public policy must be directly applicable to the employee and her actions. *Id.* "[I]ndependent authority [for the courts] to discern public policy . . . exists [only] in the absence of legislation." *Reinforced Earth Co. v. W.C.A.B. (Astudillo),* 570 Pa. 464, 810 A.2d 99, 105 (2002).

Pennsylvania's protection of employment of petit and grand jurors statute establishes the parameters of permissible conduct by employers in dealing with employees who are called to serve or who serve on a jury. Termination or other adverse action is proscribed, 42 Pa.C.S. §4563(a), and the employee has a court remedy, 42 Pa.C.S. §4563(c), except for employers in the service industry with fewer than 15 employees. 42 Pa.C.S. §4563(d). Thus, according to the defendants, the stated public policy of the General Assembly of the Commonwealth of Pennsylvania is not to sanction service-indus-

try employers of fewer than 15 employees who terminate an employee for serving on a jury. *Id.* It is their position, this is not a situation where the legislature is silent on employees in the plaintiff's class and employers in defendants' class. The legislature specifically considered such employees and employers and excluded the employers from liability. In their view, a clearer statement of public policy cannot be found, and the courts cannot create a contrary public policy. *Reinforced Earth,* 810 A.2d at 105.

According to defendants, by adding subsections (d) and (e) to the statute in 1982, the legislature clearly intended to and did in fact exclude those employees in plaintiff's class from the protection against termination for serving on a jury. Defendants assert the basis for this exclusion is easily deduced: The legislature recognized the hardship on small service-business owners that resulted from losing one of their few employees to jury duty and determined that, in such a case, the competing interest of economic vitality of small businesses outweighed the interest in the performance of civic duty.

Defendants note, to remedy the potentially harsh result, the legislature further provided that any employee of such a business called to serve on jury duty must upon request, be excused from service. 42 Pa.C.S. §4563(e). According to defendant, the legislature effectively gave such employees an opportunity to be excused from serving on a jury in order to protect the small business owner while at the same time protecting the employee's job.

In conclusion, according to defendants, plaintiff (arguably) despite being encouraged to do so by defendants in this case, failed to avail herself of her statutory rem-

edy to be excused from service. The consequences of her actions were thus to face potential termination. Having made her choice, plaintiff, according to defendants, cannot now claim her remedy is "inadequate" and that she is somehow protected by a public policy that expressly excludes those in her class. Rather than being without a remedy, plaintiff is more accurately, according to the defendants, without a right, because the legislature has excluded her from the protection of the public policy. See *Hunger v. Grand Central Sanitation,* 447 Pa. Super. 575, 580, 670 A.2d 173, 175 (1996) (holding for discharge to be wrongful under public policy exception, the stated public policy must be directly applicable to the employee and her actions). Additionally, defendants add the competing public policies of civic duty and economic vitality have already been balanced by the legislature in enacting 42 Pa.C.S. §4563, and the court cannot alter this balance and it is not for the courts to legislate or by interpretation to add to legislation matters which the legislature saw fit not to observe.

According to plaintiff, defendants' argument that by enacting 42 Pa.C.S. §4563 "the legislature recognized the hardship on small service-business owners that resulted from losing one of their few employees to jury duty and determined that, in such a case, the competing interest of economic vitality of small businesses outweighed the interest in the performance of civic duty" and consequently decided to permit small service-business employers to terminate any employee who serves on jury duty, is simply without merit. In plaintiff's view, the "economic vitality of small businesses" is, in fact, protected by 42 Pa.C.S. §4563. However, the "economic

vitality of small businesses" is protected not by eliminating an employee's well-established ability to bring a claim for wrongful discharge when such an employee has been terminated for serving on a jury, as defendants contend, but rather by not exposing small business employers to the harsh criminal and attorney fee-shifting provisions that large business employers are subjected to under subsections (b) and (c) of 42 Pa.C.S. §4563. See *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978), holding that an employer who discharges an employee for serving on jury duty violates public policy.

Thus, defendants' argument that "by adding subsection (d) and (e) to the statute in 1982, the legislature clearly intended to and did in fact exclude those employees in plaintiff's class from the protection against termination for serving on a jury 'is incorrect.' " Rather, by adding subsections (d) and (e) to the statute in 1982, the legislature sought to exclude employers in the defendants' class from the severe penalties imposed upon large employers by subsection (b) and (c), but did not seek to eliminate an employee's right to bring a claim for wrongful discharge when terminated for serving on a jury.

Furthermore, plaintiff argues that it is presumed that the legislature does not intend a result that is absurd or unreasonable. However, plaintiff suggests defendants directly contradict such recognition by proposing an interpretation of 42 Pa.C.S. §4563 that would produce extremely absurd and completely unreasonable results.

If 42 Pa.C.S. §4563 is interpreted in the manner so asserted by defendants, that is, "employers in the service industry with fewer than 15 employees" (and employers

in the manufacturing industry with fewer than 40 employees) "are not prohibited from terminating employees for serving on jury duty," 42 Pa.C.S. §4563 would operate so as to systematically exclude an extremely large group of citizens (those employed within small businesses) from the juror pool, thereby leaving only the employees of large businesses to serve on jury duty. Such a result is not only absurd, but also in direct conflict with 42 Pa.C.S. §4501, entitled "Declaration of policy," which provides that "All persons entitled to a jury trial . . . shall have the right to jurors selected at random from a representative cross-section . . . of the community." 42 Pa.C.S. §4501(1). Defendants' contention completely contradicts the clearly stated public policy within 42 Pa.C.S. §4501(1) by eviscerating the right of those individuals entitled to a jury trial to jurors selected at random from a representative cross-section of the community because, under the defendants' interpretation of 42 Pa.C.S. §4563, only employees of large businesses would be permitted to serve on the jury while employees of small businesses would be excused from doing so. According to plaintiff, such an interpretation providing for discriminatory results upon individuals entitled to a jury trial could not be further from the well-established public policy declared by the Pennsylvania General Assembly in 42 Pa.C.S. §4501(1) and the Pennsylvania Superior Court in *Field v. Philadelphia Electric Company,* 388 Pa. Super. 400, 565 A.2d 1170 (1989).

Furthermore, according to plaintiff, 42 Pa.C.S. §4501(2) provides that "All qualified citizens will have the opportunity to be considered for service as jurors in the courts of this Commonwealth, and shall have an obli-

gation to serve as jurors when summoned for that purpose." 42 Pa.C.S. §4501(2). However, defendants suggest that, in enacting 42 Pa.C.S. §4563, the Pennsylvania General Assembly desired to strip employees of small businesses of their opportunity to participate in the judicial process by serving as jurors and their obligations to serve as jurors when summoned for that purpose. Such an interpretation would produce discriminatory results by prohibiting employees of small businesses from exercising their rights to participate in the judicial process. Similarly, employees of small businesses would be understandably confused as to whether they would be subject to fines for not fulfilling their obligation to serve as jurors when summoned for that purpose. Moreover, if defendants' interpretation were correct, it would raise the question, "For what purpose does an employee of a small business receive a summons for jury duty?" Therefore, defendants' contention directly contradicts the clearly stated public policy of this Commonwealth announced in 42 Pa.C.S. §4501(2).

Additionally, according to plaintiff, defendants' argument that 42 Pa.C.S. §4563 permits small business employers to freely and willfully terminate employees who have complied with well-established public policy by serving on a jury indirectly contradicts 42 Pa.C.S. §4501(3) by excluding citizens from service as a juror on the basis of race, religion, sex, national origin or economic status, because of the inherent demographic differences between employees of small businesses and those of large businesses. 42 Pa.C.S. §4501(3). According to plaintiff, it is clearly absurd and unreasonable to

believe that the Pennsylvania General Assembly sought to enact legislation that would produce such blatantly discriminatory results.

Also, according to plaintiff, defendants' interpretation of 42 Pa.C.S. §4563 would also produce the unreasonable result of overburdening the Pennsylvania judicial system by effectively eliminating an extremely large portion of the juror pool. Not only would the judicial system face difficulty in securing the proper amount of jurors to maintain an efficient process, but the employees of large businesses would be forced to serve an unfair amount of jury duty to make up for the loss of so many potential jurors.

## DISCUSSION

Too often, lawyers lament that if only they could obtain a truly representative jury, one that includes a true representative cross-section of the community (*i.e.,* a fair share of business owners, professionals, and broad base working Americans) then jurors would reach well-reasoned decisions that more accurately reflect community mores, values, and fundamental fairness. Unfortunately, the laws including the provisions and interpretation that defendants request we make as to employees in any retail or service industry employing fewer than 15 persons, or by implication any employer in any manufacturing industry employing fewer than 40 persons, would allow too many people to avoid jury service. While we could only speculate on the number of people who could arguably opt out of jury service in Philadelphia, in our home county of Northumberland, with the exception of our largest employer (Northumberland County which num-

ber approximately 1,000) and retired persons, the majority of our work force would fall within the ambit of section 4563(d). As indicated by plaintiff, such a result, absent more express language by the legislature, is absurd or unreasonable. More persuasive and rational is that by adding subsections (d) and (e) to the statute in 1982 (we note subsequent to and in awareness of the court's ruling in *Reuther*), the legislature sought to exclude employers in the defendants' class from the criminal summary offense and civil penalties set forth in subsections (b) and (c); and not to eliminate an employee's right to bring a claim for wrongful discharge when terminated for serving on a jury. In our view, the mischief created by such an interpretation is discriminatory, contrary to the intent of the other provisions set forth in the declaration of policy, and the clear exemptions for jury duty; as well as presenting an administrative nightmare for judges and jury administrators who are struggling with the problem of encouraging more people to serve on juries at a time when recent studies show a reluctance to serve on jury duty, leading to a crisis in several jurisdictions.

During our research on this issue we came across an article by the American Legislative Exchange Counsel (ALEC). ALEC, which is the nation's largest bipartisan individual membership organization of state legislatures with over 2,400 legislative members from all 50 states, noted the following:

" 'The right to a jury trial is perhaps the most unique characteristic of the American justice system. Not surprisingly, today's national polls indicate that Americans continue to hold the jury system in the highest regard,'

said Duane Parde, ALEC's executive director. 'It is indeed ironic, however, that despite the long-standing support Americans have for the jury system, many in the public appear to avoid jury service at virtually every opportunity.'

"According to one study by the American Judicature Society, on average, about 20 percent of those summoned to jury duty each year in state courts do not respond. Poor juror turnout in several jurisdictions has reached crisis levels. In some urban jurisdictions, for example, fewer than 10 percent of all summons show up in court.

"In addition, 26 states still permit automatic exemptions for professionals, such as attorneys, clergy members, doctors and accountants. For those unable to receive professional exemptions, hardship excuses are handed out liberally, further depleting the jury pool.

" 'Many citizens unfairly benefit from legal loopholes that make avoiding jury service easy and many others simply ignore their civic obligation to serve,' added Kristin Armshaw, director of the Civil Justice Task Force at ALEC. 'That's why making jury service more appealing and rewarding to citizens is so critical. Plaintiffs and defendants in both civil and criminal cases deserve to receive a fair trial before a true jury of their peers. The Jury Patriotism Act will help strengthen our jury system, and this report explains how,' said Armshaw."

Out of curiosity, we secured a copy of the American Legislative Exchange Council, Model Jury Patriotism Act (attached hereto) [not published herein] and noted in summary form what the proposed law (which was most recently approved by Arizona) does:

\* Establishes a lengthy trial fund funded by a small additional filing fee to be determined by the State Supreme Court. This would enable those who would experience undue financial hardship by serving to be compensated by lost wages.

\* Increases the standards for hardship excuses.

\* Protects a juror from being fired or having to use vacation pay during service.

\* Increases the penalty for ignoring a jury summons.

\* Grants one automatic postponement to make it easier to reschedule.

\* Insures that if a person serve on the jury he or she will not be called up for two years.

Most noteworthy, given the issue in this case, is the provision that aims at protecting small businesses similar to the mitigating provisions of the Act we just ruled on. Since under our present provisions it is possible for more than one employee of a business to be called for jury service during the same period, such a circumstance, though perhaps rare, may be particularly hard on labor-intensive small businesses. For this reason, the model Act requires the court to postpone and reschedule if a second employee of the business is already serving on a jury. This provision of the model Act is supported by employer groups including the National Federation of Independent Business (NFIB).

A second important change contained in the Jury Patriotism Act would be to reduce the length of time one would be expected to serve on a jury. Such a system is already in place in many of the counties that we have

presided over. Also, service can be made more appealing by guaranteeing potential jurors that they will not be required to spend more than one day at the courthouse unless they are selected to serve on a jury panel; in the event of the latter, they would be limited to one trial. This practice is generally known as the "one-day/one-trial" system. It has been adopted by about half of state courts nationwide and is included in the ALEC Model Act. Courts have embraced the one-day/one-trial system as a response to high refusal rates, the inconvenience and hardship resulting from lengthy terms on those who are unable to obtain an excuse, and the frustration and boredom imposed on jurors. Recently, the National Center for State Courts recognized the one-day/one-trial system as a particularly effective practice. According to the NCSC, "No state court that has made the change to the shorter term of service has looked back and returned to the former practice."

Finally, a third major provision deals with the issue at hand (we acknowledge the factual dispute as to the basis for termination)—protecting employment rights. In the release by ALEC they acknowledge most states prohibit employers from terminating or threatening to terminate an employee because he or she takes time off to serve on a jury. They noted several states go further and protect employees from any adverse action taken as a result of their responding to a jury summons. The Jury Patriotism Act provides even more protection for employees. It explicitly states that a business may not require its employees to use their annual vacation, or sick leave time for jury service. This is a provision that this court recently became aware of during an impanelment of a statewide

investigative grand jury. In any event, according to ALEC, employees should not fear that by responding to a juror summons they may be required to sacrifice their annual vacation. This provision according to ALEC, is one reason why the AFL-CIO supports the ALEC Model Act.

In conclusion, as indicated, most states prohibit employers from terminating or threatening to terminate an employee because he or she takes time off to serve on a jury. We are persuaded that the statutory provisions the defendant relies on were not the exclusive remedy to an employee terminated for serving on jury duty and we therefore enter the following:

And now, October 27, 2003, defendants' motion for a summary judgment is hereby denied.